IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Vickie Fryer and Dan Fryer, | : | |
| | : | Civil Action 2:07-cv-00593 |
| Plaintiff | | |
| | : | Judge Watson |
| v. | | |
| | : | Magistrate Judge Abel |
| Ron Wager and Bantz, Gosch & Cremer, LLC, | : | |
| Defendants | : | |

# Report and Recommendation

Plaintffs Vickie and Dan Fryer bring this action alleging that Defendants Ron Wager and Bantz Gosch & Cremer, LLC committed legal malpractice by failing to identify the proper parties when serving as legal counsel to Plaintiffs, which resulted in the dismissal of the Plaintiffs' legal claims. This matter before the Court on Defendants' December 18, 2007 motion to dismiss. (Doc. 10)

Plaintiff Vickie Fryer, an Ohio resident, suffered an injury to her ankle while vacationing in South Dakota in 2003. (Fryer Aff. ¶ 1-2) The hospital misdiagnosed Fryer's injury and upon receiving a proper diagnosis after returning to Ohio Plaintiff learned that the injury to her ankle was worse than originally diagnosed, and as a result

of misdiagnosis she will suffer lifelong pain and loss of mobility. (Complaint ¶ 10)[1] As a result of the alleged malpractice of her lawyers in failing to name the proper party to the lawsuit, Plaintiffs' lawsuit is now barred by the statute of limitations. (Complaint ¶ 17-18) Plaintiffs bring suit against Wager et. al, the attorneys who allegedly committed malpractice, in Ohio. Defendants move to dismiss pursuant to Fed. R. Civ. 12(b)(2) because this Court lacks personal jurisdiction over them under both the Ohio Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

### Background

Plaintiffs are Ohio residents. (Complaint ¶ 1) On or around June 21, 2003, Plaintiff Vickie Fryer was injured during a trip to South Dakota. (Complaint ¶ 7.) Fryer subsequently sought treatment of her injury at Custer Regional Hospital in South Dakota. (Complaint ¶ 8) The medical professionals at Custer Regional Hospital diagnosed her injuries as a sprained ankle but after plaintiff returned to Ohio and had another examination, it was revealed that Plaintiff had suffered multiple fractures to her ankle. (Complaint ¶ 9-10) Plaintiff alleges that she would suffer life-long pain as well as loss of mobility due to the misdiagnosis of her ankle. Id.

Plaintiffs discovered Defendants' law firm from their website and left a phone message at Defendants' law office. (Fryer Aff. ¶ 3.) Defendants' web site has no mater-

---

[1] The standard for a motion to dismiss is whether plaintiff can prove any set of facts establishing his claims, so facts asserted in plaintiff's complaint will be accepted in determining whether the complaint is actionable.

ials specifically directed at Ohio residents, and it only passively provides information. (Wager Aff. ¶ 6.) Wager responded to the message and called Plaintiff back at her home in Ohio. (Fryer Aff. ¶ 3.) Defendant Wager mailed Plaintiff Fryer a fee agreement at her residence in Ohio, where she signed it and then mailed it back to Defendant in South Dakota. (Fryer Aff. ¶ 4.) Defendant communicated with Plaintiff in Ohio by sending her documents, electronically mailing her, calling her on the phone and sending facsimile transmissions. (Fryer Aff. ¶ 6.)

On June 7, 2005, Defendants filed a complaint on behalf of the Plaintiffs, but they misnamed the responsible party and failed to amend the complaint before the statute of limitations had run. (Complaint ¶¶ 14-17.) Because the Defendants did not name the correct party, Plaintiffs' lawsuit was dismissed. (Complaint ¶ 17.) Defendants never physically traveled to Ohio throughout the proceedings of the lawsuit. (Wager Aff. ¶ 4.) None of the defendants are licensed to practice law in Ohio. (Peterson Aff. ¶ 6.) Defendants assert by affidavit that the only services they provided to Plaintiffs were legal services in South Dakota, and that their only contacts with Ohio were those necessary to communicate with Plaintiffs regarding Plaintiffs' South Dakota claims. (Wager Aff. ¶¶ 4, 9.)

### Standard of Review

A plaintiff bears the burden of showing personal jurisdiction when a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is filed. Int'l Tech. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997). A *prima facie* show-

ing of personal jurisdiction is all that is required to defeat a motion to dismiss for lack of personal jurisdiction.  Bird v. Parsons, 289 F.3d 865, 871 (6th Cir.2002).  The court considers the facts in the light most favorable to the nonmoving party and will not consider assertions by the moving party that conflict with those of the nonmoving party. Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir.1991); Bird v. Parsons, 289 F.3d 865, 871 (6th Cir.2002).

A court may exercise personal jurisdiction if the state's long-arm statute reaches the defendants and if the exercise of jurisdiction would be consistent with federal due process. Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996). The Ohio Supreme Court has determined that Ohio's long-arm statute is not co-extensive with due process, therefore independent analyses of Ohio's long-arm statute and federal due process are required to determine if personal jurisdiction exists.  Goldstein v. Christiansen, 70 Ohio St.3d 232, 235, 638 N.E.2d 541, 543, (1994); Cole v. Mileti, 133 F.3d 433, 436 (6th Cir.1998).  When the interests of justice so require, the Court where a lawsuit is filed may transfer a case pursuant to 28 U.S.C. § 1406(a) rather than dismiss it, regardless of whether that Court had jurisdiction or not.  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962).

## Discussion

### Ohio's Long-Arm Statute

#### Parties' Arguments

Defendants  contend that because Plaintiffs initiated contact with Defendants

and because all of Defendants' duties were performed in South Dakota, Defendants did not transact any business in Ohio. (Doc. 10 p. 4.)  Because Defendants did not transact business in Ohio, personal jurisdiction over them is not conferred by Ohio's long arm statute, which states in relevant part that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) transacting business in this state." O.R.C. § 2307.382 (A).  Defendants cite Krutowsky v. Simonson, where an Ohio Appellate court found that an out-of-state resident fixing an Ohio resident's car in Illinois was not "doing business in Ohio", when the Ohio Plaintiff initiated the contact and the defendant had performed the work in Illinois. 109 Ohio App.3d 367, 371 (Oh.App.9th Dist. 1996).  Defendants also cite The Kroger Company v. Malease Foods Corp., a case with similar facts where the Sixth Circuit relied on Krutowsky and arrived at the same conclusion. 437 F.3d 506, 514 (6th. Cir. 2006)

  Plaintiffs claim that personal jurisdiction extends to Plaintiffs because they were transacting business in the state pursuant to O.R.C. § 2307.382 (A)(1).  Plaintiffs note case law where the court found non-residents who never physically entered the state to be subject to personal jurisdiction in Ohio because they were transacting business in Ohio. (Doc. 14 p. 4.)  Plaintiffs claim that Defendants provided legal services to Plaintiffs in Ohio, and knew that their responsibilities ran to Ohio residents, and that any recovery in the South Dakota suit was due and payable in Ohio. (Doc. 14 p. 5.) Plaintiffs also claim that Defendants communicated with them on a systematic basis in Ohio, through

telephone, facsimile and email on a regular basis in order to maintain a business relationship. Id.  Plaintiff cites case law of Ohio's long arm statute being interpreted to confer jurisdiction to Ohio courts over out-of-state attorneys providing legal services to Ohio clients.  Id. at 4.  Plaintiffs also note in their brief that Ohio's long-arm statute allows personal jurisdiction over a person who contracts "to supply services or goods in this state" (O.R.C. § 2307.382 (A)(2)), causes "injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed in this state" (O.R.C. § 2307.382 (A)(4)), or causes "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state" (O.R.C. § 2307.382 (A)(6)).

**Law and Analysis**

O.R.C. § 2307.382 (A) states that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state". "Transacting business" has been defined by the Ohio Supreme Court as "to prosecute negotiations; to carry on business; to have dealing. . . carrying on or prosecution of business negotiations but is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St.3d 73, 75 (Ohio 1990).  There are three factors that a court

6

must consider in deciding whether a defendant falls within the reach of the long-arm statute:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Cincinnati Art Galleries v. Fatzie, 70 Ohio App.3d 696, 699 (9th Dist. 1996), quoting S. Machine Co. v. Mohasco Industries Inc. 401 F.2d 374, 381.

In the case at hand, Plaintiffs initiated contact with Defendants, who conducted their business entirely from South Dakota, and no evidence has been offered of Defendants having any other ties to Ohio. Defendants did accept the business of Ohio residents as clients, mail them an agreement, and had regular long distance communication with Plaintiffs, but these facts are not sufficient to create a *prima facie* showing of a substantial enough connection with the forum state to make jurisdiction over the defendant reasonable. In The Kroger Company v. Malease Foods Corp., the defendant company was incorporated out-of-state, and had a lease agreement with the Ohio plaintiff but all of the properties related to the agreement were located out-of-state. Even though the defendant mailed payment to Ohio regularly, the Court of Appeals for the Sixth Circuit found that the defendant had inadequate contacts to be subject to jurisdiction under Ohio's long-arm statute. 437 F.3d 506, 514 (6th Cir. 2006).

In Friedman v. Speiser, Krause & Madole, P.C., the defendant was an out-of-

state law firm who was first solicited by the plaintiff. 56 Ohio App.3d 11, 14 (8th Dist. 1988).  While the defendant had "frequent mail and telephone communications between New York and Ohio, these commercial contacts were not 'purposefully directed' to Ohio in a way that would lead SKM to realize it could be haled into court here." Id. The court further noted that the situs of the arrangement was not shown by the preponderance of the evidence to be Ohio, because none of the substantive legal work, such as filing pleadings, took place in Ohio. Id.  Similarly in Krutowsky v. Simonson, the plaintiff was an Ohio resident who located defendant, an Illinois resident, in a national publication and initiated contact with the defendant to repair his automobile.  109 Ohio App.3d 367, 368-369 (9th dist. 1996).  The court found that Ohio did not have jurisdiction over the defendant under Ohio's long arm statute, noting that "the only intentional contact (defendant) had with Ohio was the mailing of invoices and reports to Ohio and also calling (plaintiff) in Ohio to occasionally give updates on the work. Such actions, without more, do not rise to the level of minimum contacts" Id. at 370.

    Plaintiffs' reliance on Ucker v. Taylor, 72 Ohio App.3d 777 (10th Dist. 1991) is unavailing. There, an out-of-state attorney hired an Ohio physician to act as an expert witness in a Michigan medical malpractice suit. Later the physician filed suit against the Michigan lawyer in Ohio for failure to pay all monies owed to him for his services. In Ucker, the Michigan attorney hired the Ohio physician and came to Ohio to take his deposition. The Court of Appeals held that taking the deposition in Ohio was transacting business in Ohio. Id. at 779-80. Similarly, other cases cited by Plaintiffs in their brief

8

contain critical distinctions. In U.S. Sprint Communications Co Ltd. Partnership v. Mr. K's Foods Inc., 68 Ohio St.3d 181 (1994), the defendant was located in Buffalo and being sued by the plaintiff in Ohio to collect unpaid phone bills. The Court found that jurisdiction existed because the defendant regularly solicited business in Ohio, and had ordered phone service for use with distributors located in Ohio. Id. at 185.

In the case at hand, Defendants did not engage in the practice of law in Ohio, did not transact business in Ohio, have never solicited business in Ohio, and did not have sufficient contacts to Ohio to be subject to personal jurisdiction under Ohio's long-arm statute. See Kroger, 437 F.3d at 514; See also Friedman, 56 Ohio App.3d at 14; Krutowsky, 109 Ohio App.3d at 370. Like the defendants in the aforementioned cases, the Defendants in the case at hand did not initiate contacts with the plaintiffs, the defendants never entered Ohio, and the duties under the agreements were to be conducted outside of Ohio. Long distance correspondence between in-state plaintiffs and out-of-state defendants concerning duties to be performed out-of-state is not sufficient to confer jurisdiction under Ohio's long-arm statute. Defendants' only other link to Ohio is the website which Defendant Bantz, Gosch, & Cremer LLC, maintains. Defendant's website is a national website that is not specifically targeted to Ohio residents. Having a national website alone does not confer jurisdiction to any state where that website is accessed. The Cadle Company v. Schlichtman, 123Fed.Appx. 675, 677-78 (6th cir. 2005).

Defendant asserts that jurisdiction may exist under sections of the Ohio long-arm

statute other than O.R.C. § 2307.382 (A)(1). (Doc. 14 p.4.)  However, no evidence is offered to support this assertion. This Court finds that no jurisdiction exists under O.R.C. § 2307.382 (A)(2) (contracting to supply goods or services in this state) because the services were to be provided in South Dakota. No jurisdiction exists under O.R.C. § 2307.382 (A)(4) (causing injury in this state by an act or omission outside this state if (defendant) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed in this state) because defendant does not regularly do or solicit business in Ohio. No jurisdiction exists under O.R.C. § 2307.382 (A)(6) (causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when (defendant) might reasonably have expected that some person would be injured in this state) because there is no evidence that Defendants acted with the purpose of injuring persons in Ohio.

Because jurisdiction over defendants is not conferred by Ohio's long arm statute, it is unnecessary to resolve whether personal jurisdiction over Defendants would conform to the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, the Court finds that Ohio's long arm statute does not confer jurisdiction over the Defendants.

<h3 style="text-align:center">Venue Transfer</h3>

28 U.S.C. § 1406(a) provides that "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

of justice, transfer such case to any district or division in which it could have been brought." Transfer of venue pursuant to 28 U.S.C. § 1406(a) may be raised *sua sponte* by the Court. Flynn v. Greg Anthony Construction Co., Inc., 95 Fed.Appx 726, 738 (6th Cir. 2003). A Court does not need personal jurisdiction over a defendant in order to transfer a case to a different venue. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466. (1962) Pittock v. Otis Elevator Co., 8 F.3d 325 (6th Cir. 1993). In Goldlawr The Supreme Court explained:

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years-that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities. It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired.

Goldlawr, 369 U.S. at 466-67. It is within the discretion of the court to decide whether to transfer or dismiss a case that has been brought where venue is improper. Minnette v. Time Warner 997 F.2d 1023, 1026 (2nd Cir. 1993). United Liberty Life Ins. Co. v. Pinnacle West Capital Corp., 149 F.R.D. 558, 562 (S.D. Ohio 1993). Because the material events in this case took place in South Dakota, and to prevent hardship to the plaintiffs, this

11

Court will exercise its discretion and transfer this action rather than dismiss it.

For the forgoing reasons, Magistrate Judge HOLDS that Defendants' December 18, 2007 motion to dismiss (doc. 10) should be GRANTED to the extend that this action should be TRANSFERRED to the Northern District of South Dakota.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsiderations by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1)(B); Rule 72(b), Fed. R. Civ.P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. Thomas v. Arn, 474 U.S. 140, 150-52 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981) See also, Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989).

                                                s/Mark R. Abel
                                                United States Magistrate Judge